Good morning, honorable members of this court. My name is David Jordan from Gallup, New Mexico. I am the attorney for Miles Beam, and it is a pleasure to be here in front of you this morning. I would like to reserve two minutes for rebuttal, please. Please watch the clock. I shall. It's right in front of me. All right. I'll do my best. Your Honors, my client was a teacher at Hopi Junior Senior High School on the Hopi Indian Reservation in Arizona. He had been a teacher there for several years. He was disciplined, he contends, for what he was saying to students, what he was teaching, what he was speaking to them about. He was disciplined. They called it insubordination and unprofessionalism, and he has challenged that discipline on First Amendment grounds under a Bivens analysis. The district court dismissed contending that Hopi Junior Senior High School is not a federal actor for Bivens analysis because it is a tribally controlled school. We challenge that conclusion on this appeal. The district court used Rendell Baker, right? It did. You challenged that use? I don't challenge the applicability of it. I challenge the application of it. Okay, so you're not challenging that Rendell Baker is, in fact, the case we ought to apply. All you're suggesting is that it was applied wrongly, as I understand it. That is correct. So if we go through the Rendell Baker factors, then you're going to talk to us about which ones were applied wrongly because there are four factors, right? That is my intent, yes. All right. I just wanted to make sure because your brief seemed to be saying that, but I didn't ever actually say. I was wondering if we had to look at a different test. No. Okay. No, you're good. All right. Okay. Thank you. The key to our challenge, and I believe the key to the appellee's position where we fundamentally disagree, is the question of whether or not there is a sufficient nexus between the federal involvement here and the activity. Well, we understand that, but what I was getting you to, to determine whether the nexus exists when dealing with whether the employees of the private school engaged in the state action, we're to consider four factors. And those four are the degree of funding by the government. I could go through them. I'm sure you know them having read your brief. So which factor are you challenging? Well, that's a good question. Because the bottom line is if I'm to determine the nexus when I look at these factors, then I take these factors and I put them all out on my outline, and I say, okay, which one is this guy after here? And I say, I'm having a tough time. It seems to me they're applied correctly. Well, the degree of funding is 100 percent. Well, the first one, the degree of funding by the government, you don't argue that the funding of the high school is enough to warrant the finding, do you? I do not. Okay. So then Randall Baker says no state action even where virtually all of the school's income is derived from government funding is enough. So number one is satisfied. Well, okay. So then I go to number two. All I'm trying to do is get you to concentrate on the factors that I'm supposed to look at. If you agree that Randall Baker is what I'm to apply, and then I go through and apply these factors, which one did the district court apply incorrectly? And I apologize. I do not have the four factors in front of me. Oh, okay. So we've got money, extensive regulations. That's the one. Whether it's exclusively a federal function and I can't remember. A symbiotic relationship. Symbiotic relationship. If we're looking at the impact of governmental regulations on the conduct of the private employer, which is the second Randall Baker factor, the court said it has to actually, the particular regulation at issue has to compel the decision that's being challenged. So the Supreme Court said even though the school was subject to substantial state regulation, there was no showing that the firing decision had been compelled or even influenced by any state regulation. So I guess here the court found that the firing decision here wasn't compelled or even influenced by any federal regulation. So do you want to explain why that's wrong? Yes. The federal government, if I may just take one step back before I answer your question, because it will help, I promise. And I'm not dodging the question. The federal government has dominated Indian education pretty much since its inception. In BIA schools, right? No. Oh, no. In all forms of schools. But I thought the statute, the TCSA, is that it? Yeah, it is. Got the federal government pretty much out of the business of running non-tribal schools. And that's just false. The school had been a BIA-funded school, but then it converted to a tribally-operated school, right? It converted to a tribally-controlled school under the grant program, yes. Isn't that stepping back rather than forward with regard to the federal activity? It is a very small step back. If I may explain for a second, Your Honors. Go ahead. Okay. All aspects of the school, including in particular what teachers are able to say to students, are controlled by the federal government. And what's the regulation that says that? 25 CFR 36.24. Isn't that related to BIA schools? No. That's tribally-controlled schools. That's where they control the curriculum completely, what teachers teach students. The curriculum in these schools is 100% under federal control. Our position is But does the curriculum say that your client compelled your client to be fired? The curriculum says what a teacher can and can't say to students. Our position is my client was not saying something in the curriculum and was fired. And we're saying when the federal government 100% controls the curriculum, the federal government, the court can't conclude that they have no influence in what a teacher says to students when it's federally-controlled curricula. Counselor, the problem I'm having with your argument is that Congress clearly intended to reduce the amount of federal involvement in schools where the tribes agreed to take over the operation of the school. That seems to undercut your argument that there is, I'll call it federal state action here, when the intent of Congress is to do just the opposite. So the intent of Congress is one thing. The reality is something completely different. But don't you agree that the tribe complied with the statute when it converted to a tribally-run school? Oh, I believe that, but I don't think that's relevant to this analysis. Well, it is if the intent of Congress in enacting the statute is to reduce the role of the federal government in the education of Native American children on reservation. I grew up on a Native reservation. What is promised by the feds and what is actually done are never the same. They did not give them the freedom that they promised them. That's not the reality. That's the point we're trying to make in our brief. The reality is absolute federal control. I mean, yeah, they made pithy statements about how we're trying to give you control up to the tribes, but the reality is everything is under control. Including the decision to discipline? Yes, yes. Grievance procedures. There's an appeal to the BIA for grievance procedures. How can you say it's under tribal control when the BIA retains final approval on a grievance? Did he appeal to the BIA? He did not. He just filed this action. He did. Why didn't he exhaust his administrative remedies if you assert that they apply? I'm not certain that he was aware that he had those remedies at the time. I don't know. He came to see me after the time expired, so I don't have an answer as to why he didn't. But my point is you can't say the federal government's got no involvement in these decisions when the federal government makes all the ultimate decisions. The problem we're struggling with here is the Supreme Court has told us repeatedly that we are to be very wary of expanding Bivens' causes of action in the absence of an express declaration by Congress that it is intended to constitute federal action. And we're asking all these questions here because in applying these Rendell-Baker factors, we're having a hard time justifying doing what the Supreme Court has told us, be wary of doing before you do it. I understand that. And I understand the congressional intent here appears to be to try and turn this thing over to the tribes. But our position is when the federal government is as involved as they are in this case, and we've listed in my brief the numerous aspects of this school that is controlled by the feds, this is at best a joint venture between the tribe and the federal government. And at worst, the tribal, quote-unquote, control is a sham. I mean, how can you say... So I'm looking at these notes on the regulation that your brief cited to 25 CFR Section 38, which... No, it's 3624. I apologize. 36.24. 36.24? So, no, I'm looking at 38, not the curricula instructions, but the disciplinary proceeding. And this says that laying out the grievance discipline process for BIA employees and other personnel, and it says that 38.1 explains that 38 applies only to individuals in education positions as defined in 38.3, and 38.3 defines education position as a position in a bureau, elementary, and secondary school. So indicating that the disciplinary process applies only to BIA employees, not to employees in the non-BIA schools. Is that wrong?  My understanding of Section 38.9E3 is that in a tribally controlled school, if you have a grievance and it does not go your way with the school board, it can be appealed to the BIA. That is my understanding of 38.9E3. Did you cite that? 38. I did. Page 13 of my brief. Section 38.9E3. My understanding is, if I'm wrong, I'm wrong, I guess, but that is my honest understanding, is that you can appeal, that a teacher such as Mr. Beam can appeal to the BIA a grievance. Isn't that a factor that the Supreme Court has told us we should consider before we expand Bivens? In other words, the availability of alternative remedies. It definitely is. But the question of whether or not there's any remedy is one thing. The question of whether or not there's a sufficient alternate federal remedy is a different question. Our position here is there is no sufficient alternate federal remedy to protect civil rights in this case. I'm not sure that it has to be federal. My reading of the case law is that if there are administrative remedies available, I don't read the case law as saying they have to be federal remedies. In this case, they can be, I guess, an administrative appeal within the BIA structure. If the remedy allows the employee to challenge and obtain some sort of independent review of their constitutional rights, that's one thing. There is no such remedy in this case. So you're saying the only remedy that would be available to him would be overturning the discipline and ordering. Was he fired or just – He was fired. Does the administrative remedy have as one of its remedies the ability to order reinstatement? Does the grievance – can you order reinstatement under the grievance? Yes, sir. All right. I'm a little worried about what you said about CFR 38. When I read the letter, July 1, 2016 letter from the Bureau of Indian Education to the school board, and I read the policy GCQF, which describes the disciplinary policy for the high school teachers, none of them list Part 38 as a regulation was applicable to a high school. If you're saying – So I'm trying to figure out why you say they are. This is a high school. I looked at the letter from the Bureau of Indian Education to the school board. I looked at the policy GCQF, which describes the disciplinary policy for the high school. None of them list Part 38 as any regulation applicable to the high school. So I said to myself, I don't believe 38 is applicable to the high school. Well, all I can tell you is my plain reading of 38. I mean, if that's so, why would the Bureau of Indian Education, which they wrote right to the school board, why would the policy, which is the policy describing what your policy is, say 38 has nothing to do with this? I don't know why the BIA would do that. I don't have an answer for you. All right. Okay, you're running out of time, but we'll give you a minute for rebuttal. Okay, thank you. Good morning, Your Honors. May it please the Court, Counsel. My name is Ken Brendel, and I am here appearing on behalf of Mr. Naha and Mr. Loebick, at the time, of the Hopi Junior Senior High School, located on the Hopi Reservation in northeastern Arizona. As this Court correctly pointed out, the factors that are set forth in Brendel-Baker are what ultimately the district court judge determined that Mr. Naha and Mr. Loebick, for purposes of a Bivens liability, were not federal actors. The analysis, I'm sorry. Now he says they were the appropriate factors, but misapplied. Correct. And our position is certainly that they are the correct factors, and they were correctly applied. The first factor that Your Honor pointed out, the federal funding. I mean, we certainly acknowledge that Hopi Junior Senior School, as a tribally controlled grant school, submits a grant application to the federal government for grant funds. So we certainly acknowledge that the funds it receives are primarily, if not entirely, federal funds. I really don't have, excuse me. Go ahead. Go ahead. You got it. Can you address the opposing counsel's argument that the federal regulations compelled or at least influenced the firing decision here? And, in fact, the federal government is in control effectively of this decision-making authority. Certainly, Your Honor. But I will also say I cannot prove a negative. There is nothing set forth anywhere in any of the documents that supports plaintiff's appellant's position that the federal government is in any way whatsoever involved in personnel decisions, disciplinary matters, at Hopi School. We certainly acknowledge that the federal government certainly maintains some oversight of a tribally controlled grant school. They do have the right to request audits. They do have the right to know where the money is going, how the money is being spent. But what courts in this very, very long history of these matters have set forth is we're not looking at the entire overview of the operation of the school. So what the district court judge said here was, does the federal government, or did the federal government at the time of this issue, have any influence, coercion, involvement whatsoever in the disciplinary process that was involved here? And the answer is absolutely not. And the district court judge specifically pointed out in his order that plaintiff presented absolutely no evidence of that. As Your Honor pointed out with the CFRs that have been cited throughout appellant's brief, they're applicable to the BIA. They're not applicable to a tribally controlled grant school. So he references 38.9E, I think it was, which gives the federal government oversight of discharges or at least an appeal for a discharge. Does that apply to this high school? No, Your Honor, because this is not a BIA school. This is a tribally controlled grant school. So the CFRs that appellant has pointed to throughout his brief, they're for BIA schools. It's a separate beast that is operated across a number of tribal reservations across the country. But this, as a tribally controlled grant school, it's a completely different entity. What about, and he specifically cited here to us today, 25 CFR 36.24, which is that relating to curricula and instructional standards, saying you have to teach to that standard, and he taught to that standard, and yet he was fired. So he thinks that's applicable. That's his argument. Certainly, Your Honor. And also to make clear, the term firing is also incorrect. What the contracts for teachers, administrators, and other personnel in a school such as this are, they're non-renewed. They're year-to-year contracts. So it's not that someone is terminated. They are either renewed or they are non-renewed for the next coming academic year. So just for purposes of the record, Mr. Beam was not terminated. He was not fired. His contract was simply non-renewed at some point. Don't we have to assume based on the pleading that the reason for that was because of the alleged First Amendment violation? For purposes of the argument, yes, that would be the assumption that is made. So whether we call it a firing or a non-renewal, the fact is that he lost his job. He is no longer employed at the Hopi School, correct. So what remedies were available to him that he failed to avail himself of to challenge that action? Specifically, as this court pointed out, he had an appeal process through the school, through I believe it's a policy GCQF. He could have appealed that decision. He chose not to. There's also the Indian Civil Rights Act, or ICRA as it's known. He could have pursued a constitutional violation through the Hopi tribal courts. That is certainly an option that was available to him. He chose not to go that route. The Indian Civil Rights Act and certainly the Hopi tribal constitution, the Bill of Rights, they're very similar to the United States Bill of Rights, and the effect is still the same. The tribal courts are there to protect persons from having to suffer alleged constitutional violations, which is exactly what Mr. Beam has alleged here. But those are two remedies that he simply ignored, chose not to put into effect. So when we come back to the overarching question that was originally presented, how much involvement does the federal government have here with this school, when it comes to the disciplinary process, it has absolutely no involvement. And the cases have certainly set forth that in order for someone to be deemed a federal actor for purposes of Bivens liability, the government has to basically be so entrenched, they have to have coerced, somehow influenced and directed that decision. But, again, there is absolutely no evidence whatsoever that the federal government was involved in this disciplinary process whatsoever. In the disciplinary process also, just for purposes to be clear, since using terms firing and terminating, it stemmed from an incident in which Mr. Beam was going to be interviewed by students at a student-run radio a number of miles away from the school. He was going to leave his class unattended, unsupervised. When Mr. Naha and Mr. Lobick learned of this, they told him, no, he couldn't go, because his class was not going to have a teacher. That's what this stemmed from. And at that point, Mr. Beam then challenged that decision, saying, because he was not being allowed to be interviewed on the student-run radio program, that the school was somehow stifling his First Amendment rights. But as has also been set forth in the record, Mr. Beam had a history of speaking out for years, and the school had never done anything. So Mr. Beam was known to the school. That was who Mr. Beam was. But, again, it didn't stem from anything that was said or not said. It was the fact that he was going to leave his classroom back at the school unattended, unsupervised, with no coverage. So is it your position that this case is similar, let's say, to the Department of Defense hiring a contractor to perform some work, and then the contractor makes the decision as to whether to hire or fire one of its employees who happens to be working on the government contract? Certainly, Your Honor. And we've cited several of those cases in our brief. I believe it's the Pacific case, Georgia v. Pacific. I'm sorry, I don't have the site in front of me. A San Diego County case. It involved the oversight, the operation of a prison. But what was specific in that case was, as the court set forth, the government retained the right to terminate employees, which we do not have here. There is not a single piece of paper that an appellant can point to that shows the government, the federal government, retained any such right involving personnel matters, disciplinary matters. And that's simply because none exist. The other case, certainly Rendell Baker, the case there, the federal government or the state retained the right to basically give its input on the, I believe, the vocational person being hired, because they wanted to ensure that a person with the proper credentials was going to be hired. Again, there's no such issue here. The federal government retained absolutely no oversight regarding disciplinary and personnel matters involving Hopi School. And when we turn then next to performing what has traditionally been an exclusive prerogative, appellant wants you to believe that, through the brief, that the federal government has been the only entity that has provided education for Indian children for well over a century. But that's simply not the case. Just in the last approximately 50 years, as Your Honor pointed out, legislation has been enacted, the Indian Self-Determination and Education Assistance Act in 1975, with the goal being to disengage the federal government from Indian education. That was followed up by the Tribally Controlled Schools Act, that we're here because Hopi School is a tribally controlled grant school. The goal for the federal government over, I mean, even if you just look at the last 50 years and you don't go back to the Johnson O'Malley Act, missionaries and religious organizations that went out onto Indian reservations more than 100 years ago, and they were paid by the federal government to go teach and educate Indian children. We have state schools in the interim that started coming out onto Indian reservations and being paid by the federal government to then step in and take over the education of Indian children. So the overarching policy here by the federal government, regardless of what appellant says, what they promise is different than what is actually happening, the fact is there is legislation on the books. These acts are in place. They work. That's why Hopi Junior Senior High School is a tribally controlled grant school, because of the Tribally Controlled Schools Act. That allows the tribes to start, not start, but to, through their inherent sovereignty, to get into the business of educating their own children, and that's what we have here. It's the federal government accepting a grant application and saying, here, here are the funds to go run your school in your communities with your people. You run them. And as I said, we certainly acknowledge there is some oversight, auditing, financial issues. But when it comes to disciplinary issues, the federal government has absolutely no involvement whatsoever. How about the curriculum? The same, Your Honor. The curriculum, the curriculum, you could probably say the curriculum throughout the entire country, whether it's private schools, public schools, tribally controlled schools, BIA schools, is influenced by the federal government, as the same courses and curriculum have been taught for 100 years. But even if we were to accept that the CFRs pointed out by appellant are specific to the Hopi Tribal School, Hopi Tribally Controlled School, it says, thou shalt teach math. Thou shalt teach history. It doesn't say that you are going to teach these specific courses in history or Algebra I or Geometry II. It simply says students across this country are going to learn math, science, history, and such. But the school is allowed to implement its own curriculum because many of the legislative acts, and specifically the Tribally Controlled Schools Act, speaks to turning the reins back over to the tribes and acknowledging that the tribes have special needs and special circumstances. They have a different culture, and that's what the tribes are then able to teach their children that are in these tribally controlled schools. If I look at CFR 36.24 and read through it, which I tried to, it doesn't seem to me that there is any regulation there which contains any subjective standard which would have compelled, and I'm reading now, or influenced the defendants to decide whether to fire, that's his allegation, the plaintiff. And it seems to me that's the thing he's got to show, right? I agree 100%, Your Honor. There is absolutely nothing showing the federal government retained any authority whatsoever regarding this. Even if they gave standards as to curricula or as to instructional standards, there is nothing in there that would say that they compelled or influenced the defendants to decide to fire the plaintiff. That is correct, and absolutely no evidence has been put forth by appellant to support that position. I'm over my time, so thank you very much. Thank you for your argument. We'll give you a minute for rebuttal. I disagree on the comment on the governing of curricula. The federal government does tell the schools this is what you shall teach. Our position is that the district court should have allowed us to demonstrate on the record as we went forward, because this was done at the beginning of the case, that the feds influenced this. But how is this any different from the federal government awarding grants to any community and by regulation prescribing the, I'll call it, terms and conditions that are hinged to the award of the grant? In those situations, if the federal government retained sufficient amount of control, I could contend they also can have Bivens liability. Most of the cases, as I pointed out, and I think your opponent cites in his brief, cases, for example, involving the Department of Defense or other cabinet-level agencies that hire contractors, case law is pretty clear that it's not sufficient state action to convert them into federal actors. I'm out of time, but the only thing I want to say that I think makes this different is the federal dominance in the area of Indian education. And I think the federal dominance from treaties and earliest stages makes this a unique situation of federal dominance. All right. We thank you for your argument. The case of Miles Beam v. Alban Naha and Jason Lopik is submitted and we're adjourned for this session.
judges: Tallman, Ikuta, N.R. Smith